## McDERMOTT v. SQUIER.

CORPORATIONS — STOCK SUBSCRIPTIONS—BONUS—APPLICATION TO SUBSCRIPTIONS—INSTRUCTIONS.

> Where, in an action by a receiver of a corporation for unpaid stock subscriptions, the evidence tended to show that, before the organization was perfected, the stockholders agreed that a bonus promised by citizens as an inducement and aid to the enterprise should be divided and applied on the stock subscriptions, and it was so credited, making up the balance of the subscriptions, it was not error to charge that, though the bonus could not be so divided if it was an asset of the corporation, yet if it was raised to promote and carry on the enterprise, and actually went into the corporation, which had its benefits, and it was not the property of the corporation, which was not then in existence, there could be no recovery.

Error to Newaygo; Palmer, J. Submitted June 18, 1900. Decided June 26, 1900.

*Assumpsit* by James E. McDermott, receiver of the Hillsborough Manufacturing Company, against Andrew T. Squier, upon a subscription to the capital stock of said

corporation. From a judgment for defendant, plaintiff brings error. Affirmed.

*Newnham & Fyfe*, for appellant.

*W. D. Fuller*, for appellee.

MONTGOMERY, C. J. Plaintiff, as receiver of the Hillsborough Manufacturing Company, an Ohio corporation, sues to recover $500 claimed to be due from defendant as unpaid subscription to the capital stock of the corporation. The case lies within a narrow compass. Defendant subscribed for $4,000 of the stock of the corporation, and has paid in cash and expenses incurred on behalf of the corporation $3,500. Whether he has paid the remaining $500 depends upon whether a certain "bonus" contributed by citizens of Hillsborough is to be treated as a contribution to the corporation as such or as a donation to the promoters. It appears that, in the spring of 1890, Edward P. Chamberlain owned certain machinery then at Grand Rapids, Mich., valued at $7,000, and he, in company with defendant, visited Hillsborough, Ohio, with a view to starting a factory at that place, and decided to do so if the citizens there would give certain financial aid to the enterprise. Soon after, information came to the defendant that the proposed aid ($1,500) had been subscribed. Up to this time no corporation had been formed or agreed upon. Defendant and Mr. Chamberlain were the only persons concerned in the enterprise. At this stage it was decided to form a corporation. It was at first the purpose to divide the stock equally between defendant and Chamberlain, defendant putting in $7,000, and Chamberlain contributing his machinery at the same figures. It became necessary to have more than two stockholders, and it was proposed to have subscriptions for single shares of stock by citizens of Hillsborough, who should become directors. On approaching persons to take stock, it transpired that those who were sought for preferred to take a larger interest, and it was finally agreed that defendan

should subscribe for 160 shares, amounting to $4,000, Chamberlain for 280 shares, S. P. Scott for 70 shares, O. S. Price for 45 shares, and L. S. Smith for 45 shares, each, of which the par value was $25. The whole case turns upon the agreement made at this time. Defendant's testimony tended to show that, before the organization was perfected, it was agreed between Chamberlain and the other stockholders that the "bonus" which had been promised to Chamberlain and defendant should be divided as follows: $500 should be applied on defendant's stock subscription, $500 on the stock subscriptions of Scott, Price, and Smith, and the remainder should be used by Chamberlain to transport the machinery which he was to furnish from Grand Rapids to Hillsborough. When the bonus money was turned over to the company, $1,000 of it was credited to capital stock, and this, with the other payments made by the other stockholders, made up the entire subscribed stock. The circuit judge charged:

"Was this amount of money subscribed by the citizens of Hillsborough, at the time it was divided by these men, a fund to be used for the purpose of making the enterprise talked of a success, or was it subscribed and used for the purpose of organizing this corporation, as an asset of the corporation? If it was an asset of the corporation, as I have stated, it cannot be so divided, and Mr. Squier would be liable for $500. If, at the time this agreement was made,—this meeting was had,—it was talked over that this money which had been raised by the citizens for the purpose of carrying on this enterprise should be divided by these people who had united their energies and funds for the purpose of carrying on and promoting this enterprise; that the money actually went into the corporation; that they had the benefit of it; and that at that time it was not the property of the corporation; that no corporation was then organized and in existence,— if this be true, then your verdict should be, 'No cause for action.'"

It is contended that the agreement that the individual stockholders should have the benefit of the bonus subscribed by citizens of Hillsborough was not binding upon the corporation; that it was, in effect, an agreement by

the promoters that defendant and the other stockholders should not be called upon to pay the full subscription price.   We think the contention of plaintiff is based upon a misapprehension of the relation of the parties to this fund. When the agreement was made, it is quite true that it was not competent to bind the corporation, for the reason that no corporation existed, and might never exist; but it is equally true, for similar reasons, that the corporation had no interest in this bonus money, and might never have. The proposition was made to Chamberlain and defendant. They saw fit to organize a corporation as an instrumentality in establishing the industry for which the bonus was to be given.   All the parties concerned in that organization consented to the application of this money towards payment of stock subscriptions.   Who had any right to complain of the arrangement?   Certainly not the stockholders, who assented to it.   The public and subsequent creditors are without just ground for complaint for applying the bonus cash payments on stock subscriptions.   The full price of stock has been actually paid in.

The charge correctly stated the law of the case, and no error was committed in admitting the defense.

Judgment affirmed, with costs.

The other Justices concurred.